UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

|                                              |     |                        |
|----------------------------------------------|-----|------------------------|
| BEVERLY S.,[1]                               | )   |                        |
|                                              | )   |                        |
| Plaintiff,                                   | )   |                        |
|                                              | )   |                        |
| v.                                           | )   | No. 2:19-cv-00152-JMS-MJD |
|                                              | )   |                        |
| ANDREW M. SAUL, Commissioner of the Social   | )   |                        |
| Security Administration,                     | )   |                        |
|                                              | )   |                        |
| Defendant.                                   | )   |                        |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Beverly S. filed for disability insurance benefits from the Social Security Administration ("SSA") on July 27, 2015, alleging an onset date of June 23, 2014. [Filing No. 7-2 at 23.] Her application was initially denied on December 18, 2015, [Filing No. 12 at 1], and upon reconsideration on April 7, 2016, [Filing No. 12 at 1]. Administrative Law Judge Terry Miller (the "ALJ") held a video hearing on February 27, 2018, [Filing No. 7-2 at 23], and issued a decision on April 17, 2018, concluding that Beverly S. was not entitled to receive benefits, [Filing No. 7-2 at 34]. The Appeals Council denied review on January 29, 2019. [Filing No. 12 at 1.] On April 1, 2019, Beverly S. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).  "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling."  *Id.*  The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(iv), (v).  The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner.  *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Barnett*, 381 F.3d at 668.  When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion."  *Id.* (citation omitted).

## II.
### BACKGROUND

Beverly S. was 48 years old at the time of the alleged onset date of her disability. [*See* Filing No. 7-2 at 33.] She has completed her general equivalence diploma and previously worked in banking as a teller and in customer service. [Filing No. 7-2 at 48-49.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Beverly S. was not disabled. [Filing No. 7-2 at 34.] Specifically, the ALJ found as follows:

- At Step One, Beverly S. had not engaged in substantial gainful activity[3] since June 23, 2014, the alleged onset date. [Filing No. 7-2 at 26.]

- At Step Two, she had "the following severe impairments: history of anterior cervical neck surgery in April 2009/degenerative osteoarthritis in the neck with chronic neck pain/arthralgias; hypothyroidism; and depression/bipolar disorder/panic disorder, and dependent personality disorder." [Filing No. 7-2 at 26 (citation omitted).]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-2 at 27.] Beverly S. suffered from mild limitations in her ability to understand, remember, or apply information, [Filing No. 7-2 at 27], and also in her ability to adapt or manage herself, [Filing No. 7-2 at 28]. She suffered from moderate limitations in her ability to interact with others, [Filing No. 7-2 at 27], and ability to concentrate, persist, or maintain pace, [Filing No. 7-2 at 28].

- After Step Three but before Step Four, Beverly S. had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and never climbing ladders ropes or scaffolds." [Filing No. 7-2 at 29.] As for non-physical limitations, Beverly S. was "limited to understanding, carrying out and remembering simple instructions consistent with unskilled work (defined as occupations that can be fully learned within a short period of time of no more than 30 days, and requires little or no judgment to perform simple tasks),

---

[2] The relevant evidence of record is amply set forth in the parties' briefs, generally not disputed by the parties, and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

with the ability to sustain those tasks throughout the eight hour workday without frequent redirection to task; no sudden or unpredictable workplace changes in terms of use of work tools, work processes or work settings and if there are workplace changes, they are introduced gradually; cannot perform tasks requiring intense/focused attention for more than two hours continuously, but can maintain attention/concentration for two hour segments of time; only occasional work in close proximity to others to minimize distractions; work that does not require satisfaction of strict or rigid production quotas or does not involve assembly-line pace work; and only superficial interactions with supervisors, coworkers and the general public, defined as occasional and casual contact with no prolonged conversations and contact with supervisors is short but allows the supervisors to give instructions." [Filing No. 7-2 at 29.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Beverly S.'s RFC, she was incapable of performing her past relevant work as a customer service representative or reconciliation clerk. [Filing No. 7-2 at 32-33.]

- At Step Five, relying on VE testimony and considering Beverly S.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision in representative occupations, such as a checker, routing clerk, or mail sorter. [Filing No. 7-2 at 33-34.]

### III.
### DISCUSSION

Beverly S. makes four assertions of error regarding the ALJ's decision, each of which the Court will consider in turn, as necessary to resolve the appeal.

### A. Whether the ALJ's Conclusion That Beverly S.'s Degenerative Joint Disease, Gout, and Obesity Were Not Severe Was Erroneous

Beverly S. argues that the ALJ erred in concluding that three medically determinable impairments—degenerative joint disease, gout,[4] and obesity—were not severe. [Filing No. 12 at 14.] She cites to several doctors' visits in which various doctors observed tenderness, swelling, and mild degenerative changes in her right foot. [Filing No. 12 at 14-15.] Though the doctors prescribed steroids to alleviate the problems, and they were successful, she argues that the impairments "meet the *de minimis* test at Step Two." [Filing No. 12 at 15.] With respect to obesity,

---

[4] Both the degenerative joint disease and gout were concentrated in her right foot.

5

she asserts that the medical evidence shows she had a Body Mass Index ("BMI") of over 30.0, and that her obesity was a severe impairment. [Filing No. 12 at 16-17.] Moreover, Beverly S. argues that even if the above three conditions were not severe, the ALJ nevertheless erred by failing to assess them in combination with her other severe impairments. [Filing No. 12 at 15-17.] In particular, she argues that obesity is reasonably expected to aggravate other physical conditions (including degenerative joint disease and gout), as well as her severe mental conditions. [Filing No. 12 at 17.]

The Commissioner argues that at Step Two, the ALJ supported his determination on the non-severity of impairments with citations to the medical record, which collectively constitute substantial evidence. [Filing No. 17 at 9.] Furthermore, he argues that because the ALJ recognized other impairments as severe, the ALJ was obligated to proceed with the evaluation process, throughout which he was required to consider the non-severe impairments in combination with the severe impairments. [Filing No. 17 at 11.] Thus, the Commissioner argues, whether the ALJ categorized specific impairments as severe or non-severe was "of no consequence with respect to the outcome of the case." [Filing No. 17 at 11 (quoting *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010)).]

In reply, Beverly S. reiterates her arguments, adding that the Commissioner's arguments are based on unpersuasive boilerplate language. [Filing No. 18 at 4-8.]

An impairment is severe if it "significantly limits your physical or mental ability to do basic work activities" without regard to age, education, and work experience. 20 C.F.R. § 404.1520(c). Moreover, "[s]tep two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019).

The ALJ concluded that Beverly S.'s degenerative joint disease, gout, and obesity were not severe. [Filing No. 7-2 at 26.] He found that in her foot, the degenerative changes were mild and not "accompanied by a fracture, dislocation, or bony changes." [Filing No. 7-2 at 26.] He noted that she did not undergo surgery or receive regular medical treatment for these ailments. [Filing No. 7-2 at 26.] The Commissioner highlights that when Beverly S. did receive medical treatment, medication was alleviating her pain and her doctor did not indicate that she was unable to walk or stand. [Filing No. 17 at 12.] The ALJ noted that her BMI was over 30.0 and that obesity can cause or contribute to several impairments. [Filing No. 7-2 at 26.] As a result, the ALJ recognized his obligation to consider her obesity to determine whether it, in combination with her other impairments, significantly limits her abilities, despite finding her obesity was not a severe impairment itself. [Filing No. 7-2 at 26.] Though Beverly S. disputes that finding, she does not point to any medical evidence supporting her contention other than the fact that her BMI was consistently 30.0 or higher (which the ALJ specifically referenced in his opinion) and that she received some counseling regarding her weight. Thus, the ALJ supported his decision with substantial evidence, and even if he failed to do so, the existence of other severe impairments renders his error harmless. *Ray,* 915 F.3d at 492.

**B. Whether the ALJ's Step Three Finding Was Erroneous**

Beverly S. contends that the ALJ made three errors at Step Three: erroneously evaluating the "B Criteria"[5]; failing to evaluate dependent personality disorder and Listing 12.08; and failing

---

[5] As used throughout, "B Criteria" (or "Criteria B") refers to the four areas of mental functioning described in the Listings of Impairments relevant to this case. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, § 12.00(E). The B Criteria are used to rate the degree of a claimant's limitations on a five-point scale—no limitation; mild limitation; moderate limitation; marked limitation; or extreme limitation. For each of the relevant Listings, the B Criteria reads:

to consider medical equivalence.  [Filing No. 12 at 20.]  She contends that the ALJ erred when he determined that she suffered from mild limitations in B1 (understand, remember, and apply information) and B4 (adapt or manage oneself), and moderate limitations in B2 (interact with others) and B3 (concentrate, persist, or maintain pace), because he failed to consider documented clinical and other abnormalities in a way that accounted for the waxing and waning nature of mental illness over time.  [Filing No. 12 at 20-22.]  She also asserts that despite finding that it was a severe impairment at Step Two, the ALJ completely failed to evaluate dependent personality disorder under Listing 12.08 at Step Three, rendering the Step Three determination incomplete and erroneous.  [Filing No. 12 at 18.]  Finally, she argues that the ALJ failed to properly consider medical equivalence at Step Three and instead relied on boilerplate language.  [Filing No. 12 at 25.]  She contends that the ALJ's decision "lacks any discussion of the signs, symptoms and laboratory findings" required in a medical equivalence assessment, and that this error is especially apparent in combination with the ALJ failing to consider Listing 12.08.  [Filing No. 12 at 25.]

The Commissioner asserts that the ALJ cited specific evidence in support of each of his B Criteria determinations.  [Filing No. 17 at 17-18.]  According to the Commissioner, "the ALJ did not dispute that [Beverly S.] had a host of severe mental impairments, nor did he ignore that she presented to appointments with a depressed affect, exhibited impaired concentration, reported

---

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
   1. Understand, remember, or apply information.
   2. Interact with others.
   3. Concentrate, persist, or maintain pace.
   4. Adapt or manage oneself.

20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, § 12.04(B); 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, § 12.06(B); 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, § 12.08(B).

feelings of worthlessness, cried often, and avoided others." [Filing No. 17 at 17 (citing Filing No. 7-2 at 28-32).] The Commissioner argues that the ALJ considered all of the evidence and reconciled any discrepancies between objective evidence and Beverly S.'s self-reports in making his decision. [Filing No. 17 at 17-19.] With respect to Listing 12.08, the Commissioner argues that even though the ALJ did not specifically consider the B Criteria in the context of Listing 12.08, the B Criteria for Listing 12.08 are identical to the B Criteria for Listings 12.04 and 12.06.[6] [Filing No. 17 at 15-16.] Therefore, the Commissioner contends, to the extent the ALJ erred in not specifically referencing the B Criteria of Listing 12.08, that error was harmless. [Filing No. 17 at 16-17.] Furthermore, the Commissioner argues that Beverly S. only "points to records showing that she was diagnosed with dependent personality disorder" and some of her own statements, "but she does not point to records that show the requisite extreme or marked limitations." [Filing No. 17 at 16.] In sum, the Commissioner asserts that the ALJ considered all of the evidence in analyzing the B Criteria, and he cited to the record to articulate his reasons for crediting and discounting various pieces of evidence and for finding mild and moderate limitations.[7] [Filing No. 17 at 14-19.] The Commissioner also argues that Beverly S. "has a very high hurdle in arguing that the record unequivocally supports" that she meets or medically equals

_____

[6] Listing 12.04 covers depressive, bipolar, and related disorders, and Listing 12.06 covers anxiety and obsessive-compulsive disorders. As noted above, Listing 12.08 covers personality and impulse-control disorders.

[7] The parties also argue about whether the ALJ considered Beverly S.'s Global Assessment of Functioning ("GAF") scores and the axes of the Diagnostic and Statistical Manual of Mental Disorders ("DSM"). [Filing No. 12 at 24; Filing No. 17 at 19.] The ALJ acknowledges that "[t]here are several references to GAF scores within the record," but notes that they "are not properly part of the disability analysis under the Social Security Act; and the Commissioner of the Social Security Administration has declined to endorse the GAF scale for 'use in Social Security and SSI disability programs.'" [Filing No. 7-2 at 32.] Beverly S.'s arguments regarding the axes of the DSM are simply arguments that the ALJ should have found her impairments more severe than he did.

a Listing, and that she failed to clear it.  [Filing No. 17 at 14.]  The Commissioner maintains that to meet that burden, she must do more than simply argue that her impairments, in combination, equal the Listing, because resolution of such competing arguments is for the ALJ, not the Court. [Filing No. 17 at 20.]

Beverly S. replies primarily by reiterating her earlier points.  She also adds that the true issue at Step Three is equivalence, and the Commissioner's arguments focusing primarily on whether she met a Listing are misplaced and insufficient.  [Filing No. 18 at 8.]  She contends that the ALJ was required to discuss the evidence in light of all of the applicable Listings, and the shared B Criteria does not justify affirmance.  [Filing No. 18 at 9.]  She argues that in her initial brief, she cited to several medical opinions that establish the presence "of at least marked limitations" and the Commissioner's response to those points is without merit.  [Filing No. 18 at 10-12.]

Turning first to the ALJ's B Criteria determinations, the ALJ discussed individually and at length each area of mental functioning contained in the B Criteria.  [Filing No. 7-2 at 26-27.]  In making his determinations, the ALJ consistently cited to objective medical evidence in the record and also discussed relevant statements made by Beverly S.  [Filing No. 7-2 at 27-28.]  Though Beverly S. argues that the ALJ failed to account for the "waxing and waning nature of mental illness," the ALJ's decision indicates otherwise.  When discussing B2 and B3—the two areas Beverly S. disputes most strongly—the ALJ noted variation in her symptoms over time before ultimately concluding that she had moderate limitations in those areas.  [Filing No. 7-2 at 28.] When discussing her ability to interact with others, the ALJ stated that "she was regularly described as 'cooperative.' . . . Although the claimant's affect has been described as depressed, it was also often described as normal."  [Filing No. 7-2 at 28.]  When discussing her ability to concentrate,

persist, and maintain pace, the ALJ stated that "[w]hile clinicians have noted impaired concentration, there have been periods of intact concentration." [Filing No. 7-2 at 28.] The record demonstrates that the ALJ recognized and considered the waxing and waning nature of mental illness in analyzing the B Criteria. Ultimately, he determined that the ups and downs culminated in only moderate limitations in those areas.

The ALJ's B Criteria determination also undermines Beverly S.'s argument that the ALJ erred in failing to consider Listing 12.08. The ALJ stated that the severity of Beverly S.'s mental impairments, considered independently and in combination, "do not meet or medically equal the criteria of listings 12.04 and 12.06." [Filing No. 7-2 at 27.] Though the ALJ did not mention Listing 12.08 and it is slightly different from Listings 12.04 and 12.06, the difference only undercuts Beverly S.'s argument.

Listings 12.04, 12.06, and 12.08 all share an identical B Criteria. But, where Listing 12.08 can only be met if both Criteria A and Criteria B are satisfied, Listings 12.04 and 12.06 contain a Criteria C such that those Listings may be met if Criteria A and one of Criteria B or C are satisfied. In other words, if Listings 12.04 and 12.06 are not satisfied, it is impossible for Listing 12.08 to be satisfied. Thus, even though the ALJ did not specifically mention Listing 12.08, he did specifically mention and consider the B Criteria that Listing 12.08 shares with Listings 12.04 and 12.06, and he determined that the B Criteria was not satisfied.[8]

---

[8] This determination is strengthened by a deeper look at Criteria B and Criteria C. In both Listings 12.04 and 12.06, the C Criteria states:

> C. Your mental disorder in this listing category is 'serious and persistent;' that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>     1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and

Along similar lines, Beverly S. asserts that the ALJ failed to consider medical equivalence, particularly with respect to Listing 12.08. [Filing No. 12 at 25.] However, the ALJ stated multiple times that he considered medical equivalence. [Filing No. 7-2 at 27 (stating "[t]he claimant does not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" and, "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06").]

For the same reasons outlined above, Beverly S.'s arguments that because the ALJ did not mention Listing 12.08 in analyzing the B Criteria he failed to consider medical equivalence are unpersuasive. Medical equivalence means equivalence in both severity and duration to a listed impairment. 20 C.F.R. § 404.1526(a). The Court need not determine whether Beverly S.'s impairments medically equal a listing; the Court's role is to determine whether the ALJ's finding— that Beverly S.'s impairments do not medically equal a listing—is supported by substantial evidence.[9] *See Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-

---

       that diminishes the symptoms and signs of your mental disorder; and

    2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, § 12.04(C); 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, § 12.06(C). Criteria C is relative: It considers whether the claimant has received treatment for the particular mental disorder contemplated by that Listing. Criteria B, on the other hand, is not relative: It deals with limitations in the specified areas of mental functioning without regard to the mental disorder contemplated by that Listing or the effects of the particular disorder on the areas of mental functioning. Listings 12.04 and 12.06 can be satisfied if the specific impairment is severe enough, even if the independently considered B Criteria are not. But Listing 12.08 cannot; it does not require independent consideration where the B Criteria has already been found lacking.

[9] By way of background, medical equivalence can be found in three ways. First, if the claimant has an impairment described in the listings but does not exhibit all of the elements specific in the listing or the elements are not of the severity required by the listing, the impairment nevertheless

---

evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct.").

Here, the ALJ stated that Beverly S. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." [Filing No. 7-2 at 27.] The ALJ went on to say that the "severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." [Filing No. 7-2 at 27.] Though, as Beverly S. points out, the ALJ did not mention Listing 12.08, for the same reasons detailed above, that omission is not ultimately dispositive. The ALJ found that the requirements of the B Criteria—which are the same across Listings 12.04, 12.06, and 12.08—are not satisfied. Those elements are analyzed in the context of the claimant's mental health as a whole; they are not considered in the context of a specific mental impairment. The ALJ articulated a thorough discussion of Beverly S.'s mental impairments in combination and their severity in analyzing the B Criteria. [Filing No. 7-2 at 27-28.] Therefore, in light of the ALJ stating that Beverly S.'s impairments and combination of impairments do not medically equal a listing and the ALJ's robust discussion of the B Criteria, the ALJ supported with substantial evidence his finding that her impairments do not medically equal the severity of one of the listed impairments.

---

medically equals the listing if other elements related to the impairment are at least of equal medical significance to the required criteria. Second, if the claimant has impairments not described in the listings, the impairments are compared to closely analogous listed impairments. If the claimant's impairment is at least of equal medical significance to those of a listed impairment, then the claimant's impairment is medically equivalent to the analogous listing. Third, if the claimant has a combination of impairments, none of which meets a listing, the elements of the combination of impairments are compared with the elements of closely analogous listed impairments. If the elements of the combination of impairments are at least of equal medical significance to those of the listed impairments, the combination is medically equivalent to that listing. 20 C.F.R. § 404.1526(b).

**C.  Whether the RFC Fully Accounts for All of Beverly S.'s Impairments**

After Step Three but before Step Four, Beverly S. identifies five errors that she believes the ALJ made in crafting the RFC: (1) he failed to factor the non-severe impairments; (2) he did not identify neck-impairment-related work restrictions; (3) he did not "account for the restrictions in the 'B Criteria'"; (4) he incorrectly evaluated and discounted Beverly S.'s statements; and (5) he incorrectly evaluated and discounted third-party evidence.  [Filing No. 12 at 26-34.] Additionally, she maintains that the state agency opinions cannot redeem the errors in the ALJ's RFC decision.  [Filing No. 12 at 34.]

The Commissioner argues that the ALJ considered all of the evidence and, based on that evidence, crafted a restrictive RFC to account for all of Beverly S.'s impairments.  [Filing No. 17 at 20.]  The Commissioner notes that the ALJ explicitly stated that he "considered all symptoms" when crafting the RFC and he detailed a "function-by-function" analysis encapsulating all of her limitations.  [Filing No. 17 at 21.]  The Commissioner contends that despite Beverly S.'s arguments, the ALJ accounted for her impairments in the RFC and substantial evidence exists to support the ALJ's specific findings regarding her mental capabilities and ability to reach overhead. [Filing No. 17 at 22.]  The Commissioner asserts that Beverly S.'s arguments concerning the state agency doctors' opinions is not applicable here because the ALJ's RFC determination was more restrictive than the state agency doctors' opinions.  [Filing No. 17 at 22-23.]  The Commissioner also responds that Beverly S. overstates the degree to which the ALJ discounted her and her family's statements, and that the ALJ's assessment of the subjective statements was reasoned and supported by the record.  [Filing No. 17 at 24-25.]  The Commissioner argues that the ALJ properly

considered her and the third-parties' statements in light of the objective medical evidence and weighed those statements accordingly.  [Filing No. 17 at 26-27.]

Beverly S. replies by restating her earlier arguments, elaborating that the Commissioner's arguments served only to palliate the errors and did not remedy them.  [Filing No. 18 at 12-17.]

The RFC is the most Beverly S. can still do despite her limitations, and it is assessed based on all the relevant evidence in the case record.  20 C.F.R. § 404.1545(a)(1).  It is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," or, phrased differently, "8 hours a day, for five days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at 1 (July 2, 1996).

In determining Beverly S.'s RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  [Filing No. 7-2 at 29.]  Contrary to Beverly S.'s assertions, the ALJ did in fact consider the non-severe impairments—degenerative joint disease, gout, and obesity—in his RFC determination.  He noted that "her gait was normal, she was able to walk on her heel, toes, and squat, her sensation was normal, she was able to tandem walk, her range of motion was normal, and her grip strength was normal."  [Filing No. 7-2 at 31.]  Though he does not specifically mention "degenerative joint disease," "gout," or "obesity" in the RFC portion of his analysis of her physical impairments, it would be illogical to conclude that the ALJ discussed at length her gait, abilities to walk on her heels and toes, to squat, to tandem walk, and her range of motion while wholly disregarding her foot impairments and obesity.  Given that the ALJ expressly stated that he "considered all symptoms,"[10] and his detailed analysis of Beverly S.'s range of motion and

---

[10] In discussing obesity, he specifically noted that he "must consider [obesity] to determine if it alone *or in combination with other impairments* significantly limits an individual's *physical or mental* ability to do basic work activities."  [Filing No. 7-2 at 26 (emphasis added).]

her ability to walk and squat, it is clear that the ALJ factored the non-severe impairments into his RFC determination.[11]  [Filing No. 7-2 at 29.]

Beverly S. also claims that the RFC does not identify neck-impairment-related work restrictions.  She claims that the RFC does not address whether she is able to reach overhead and the frequency with which she can do so.  However, as mentioned above, the ALJ explicitly stated that her grip strength and range of motion were normal and cited to medical records supporting those findings.  [Filing No. 7-2 at 31.]  Moreover, though the ALJ determined that she had severe neck-related impairments, she reported that the issues with her neck were not large issues for her.  [Filing No. 7-2 at 29.]  Indeed, at the hearing, when the ALJ discussed her neck issues and asked "are you restricted in lifting or carrying any or . . . or standing, walking?" she stated, "not lifting or carrying . . . it's like if I sit for a long period of time and stuff I have to get up and like move around and, you know, and kind of work it and stuff.  As far as lifting and stuff, no."  [Filing No. 7-2 at 52.]  Beverly S. does not offer any limitations (or evidence to support them) that she believes the ALJ did not include but should have, and instead argues only that the ALJ failed to identify "neck-related" restrictions.  The ALJ referenced Beverly S.'s statements concerning her physical limitations, as well as doctors' observations of her normal range of motion and grip strength and limited her to "never climbing ladders ropes or scaffolds," and occasional climbing of ramps and stairs and other movements.  [Filing No. 7-2 at 29.]  That the ALJ considered and accounted for

_____

[11] To the extent that Beverly S. is dissatisfied with the degree of restrictions on her mobility in the RFC, her testimony indicates additional restrictions are unnecessary.  At the hearing, the ALJ specifically asked Beverly S. if she had "any walking or standing difficulties, or not?"  She replied, "I mean, not physically, but, I mean, I don't go out and like walk around or anything.  I don't . . . get out very often.  But physically no."  [Filing No. 7-2 at 54.]

her severe neck impairments is supported by substantial evidence, and whatever neck-related wording Beverly S. demands of the ALJ would be superfluous and unnecessary.

Beverly S. also asserts that the RFC fails to account for her moderate limitations in her ability to concentrate, persist, and maintain pace and her ability to interact with others and deal with stress. [Filing No. 12 at 28-29.] She maintains that the restrictions in the RFC—that she not be required to perform tasks requiring intense/focused attention for more than two hour segments, not perform work that requires satisfaction of strict or rigid production quotas and/or assembly line pace work, and not be required to engage in more than superficial interactions with others—do not accommodate these limitations. These arguments, however, ask the Court to apply the wrong standard. As noted by the Commissioner, the Court's role here is not to evaluate whether the ALJ's determination is correct, but rather to evaluate whether it is rationally supported by substantial evidence. *Sanders*, 600 F. App'x at 470. Beverly S.'s arguments and explanations of her symptoms and deficits were for the ALJ's consideration, not for the Court's. The ALJ accounted for her abilities and inabilities and acknowledged those symptoms and incidents. He acknowledged that she reported suffering panic attacks in new places, arrived at appointments in "'borderline hysterics' reporting fatigue, reclusion, paranoia, rumination, obsessive behavior, and an inability to complete her activities of daily living," and that she consistently "reported panic, anxiety, and an inability to complete her thoughts." But the ALJ noted that she also "reported being able to complete activities with friends, she had no mood swings, no tremors, she had a normal appearance, she was open, cooperative, and friendly, she was logical, and her memory was intact." [Filing No. 7-2 at 31.] Ultimately, the ALJ "considered the above evidence, and limited the claimant mentally as noted above." [Filing No. 7-2 at 31.] Substantial evidence supports the conclusion that the ALJ weighed the conflicting evidence and restricted Beverly S. accordingly.

Beverly S. last claims that the ALJ improperly discredited her statements and third-party statements from her family. [Filing No. 12 at 30-32.] The Seventh Circuit has routinely held that because "'the ALJ is in the best position to determine a witness's truthfulness and forthrightness,' we will overturn an ALJ's credibility determination only if it is 'patently wrong.'" *Stepp v. Colvin*, 795 F.3d 711 (7th Cir. 2015) (quoting *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012)). The Seventh Circuit also noted that the "ALJ is 'free to discount the applicant's testimony on the basis of other evidence in the case' as 'applicants for disability benefits have an incentive to exaggerate their symptoms.'" *Id.* (quoting *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006)) (alterations omitted). With respect to third party statements, the ALJ stated,

> Since they are not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the report is questionable. Moreover, by virtue of the relationship as family members of the claimant, the witnesses cannot be considered disinterested third party witnesses whose report would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to their report because it, like the claimant's, *is simply not consistent with the preponderance of the opinions and observations by medial doctors in this case.*

[Filing No. 7-2 at 30 (emphasis added).] The ALJ then spent the next six paragraphs detailing exactly how Beverly S.'s and the third-party witnesses' statements were not entirely consistent with the medical record, starting each paragraph with their statements about various ailments and then detailing and citing to medical records contradicting those statements. [Filing No. 7-2 at 30-31.] Therefore, the Court does not find that the ALJ's credibility determinations were "patently wrong," and they are entitled to deference.

Last, Beverly S. contends that the state agency opinions cannot salvage the ALJ's errors. [Filing No. 7-2.] However, she has not identified, and the Court has not identified, any errors that

require salvaging.  Furthermore, the ALJ did not rely on the stage agency doctors' opinions and actually found that she was more limited than determined by the state agency consultants.  [Filing No. 7-2 at 32.]

### D.  Whether Substantial Evidence Supports the ALJ's Step Five Determination

Last, Beverly S. contends that the Step Five determination is not supported by substantial evidence, and the ALJ's decision does not satisfy the Agency's burden to show that other work exists in significant numbers.  [Filing No. 12 at 35.]  She argues that the position of Mail Sorter is properly classified as sedentary and semiskilled, not as light and unskilled as the ALJ's opinion states.  [Filing No. 12 at 35.]  Additionally, she asserts that all three occupations listed in the ALJ's opinion require frequent reaching, and that the RFC is silent on her ability to reach in all directions despite the ALJ finding severe impairments affecting her spine and neck.

The Commissioner argues that Beverly S.'s distinction between sedentary and light work is inconsequential in this case because if an individual can perform light work, that person can also perform sedentary work as defined in the regulations.  [Filing No. 17 at 26-27.]

Beverly S. replies that the "ALJ's *entire* decision rests on the 'light' RFC assessment because, if Plaintiff were limited to sedentary work, the Agency's Grids would have directed a finding of disability."  [Filing No. 18 at 20.]  Therefore, the Commissioner's argument that because Beverly S. can perform light work, she can also perform sedentary work misunderstands the significance of the distinction in this case.

Both sides miss the issue: The ALJ listed an alternate title of the occupation.  At Step Five, the ALJ included in his list of available jobs "Mail Sorter DOT# 209.687-026, SVP 2, light per the DOT, 55,000 jobs in the nation."  [Filing No. 7-2 at 34.]  This is inexact; "Mail Sorter" is not the occupation defined in the Dictionary of Occupational Titles ("DOT").  Instead, there are "Sorter"

and "Mail Clerk" positions listed.  "Sorter" is the occupation upon which Beverly S. bases her argument, and its corresponding DOT information—to which she cites—is "DOT# 209.687-022, SVP 3, sedentary."  1991 WL 671812.  "Mail Clerk" corresponds to the additional details in the ALJ's decision (DOT# 209.687-026, SVP 2, and light), and one of its alternate titles is "Mail Sorter."  1991 WL 671813.  It appears that the ALJ used "Mail Sorter" when referring to "Mail Clerk."  This is a mere technicality and a simple search of the corresponding DOT information included by the ALJ would have revealed the slight discrepancy.[12]  Moreover, even if the Court struck the Mail Sorter/Mail Clerk occupation, the Vocational Expert and ALJ identified two other occupations totaling 78,000 jobs that Beverly S. is capable of performing.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent."  *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 271 (7th Cir. 2010).  "The Act does not contemplate degrees of disability or allow for an award based on partial disability."  *Id.* (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)).  "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful."  *Williams-Overstreet*, 364 F. App'x at 274.  Taken together, the Court can find no legal basis presented by Beverly S. to reverse the ALJ's decision that he was not disabled during the

---

[12] Beverly S. and her counsel are cautioned to not misrepresent the ALJ's decision or the details of the Mail Sorter and Mail Clerk occupations.  The occupation to which she cites is titled "Sorter"—not "Mail Sorter," as she represents—and it is not the occupation to which the ALJ was referring.  Contrary to her assertions, "Mail Sorter" is not classified as sedentary, and it does not have an SVP of 3.  [Filing No. 12 at 35.]  Instead, as the ALJ stated, it is classified as light, and it has an SVP of 2.  1991 WL 671813.

relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

Date: 1/27/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**